NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MICHELLE LYNNE KENDALL,<br><br>    Plaintiff,<br><br>        v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Civil No. 13-4570 (RMB)<br><br>**OPINION** |

**APPEARANCES**:

David Lazarus
Brian Smith
Community Health Law Project
900 Haddon Ave., Suite 4000
Collingswood, NJ 08108
        Attorney for Plaintiff

Elizabeth Rothstein
United States Attorney's Office
c/o Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278
        Attorney for Defendant

**BUMB**, UNITED STATES DISTRICT JUDGE:

    Plaintiff Michelle Lynne Kendall (the "Plaintiff") seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of the Acting Commissioner of Social Security (the "Commissioner") denying her application for Social Security

Supplemental Income ("SSI"). For the reasons set forth below, the Court will vacate the decision of the ALJ and remand.

I. **Background**

a) Procedural History

Plaintiff applied for SSI on September 18, 2009, alleging a disability onset date of December 1, 2007, which was amended at the hearing to September 10, 2009. (Administrative Record "R." 114-20; 31). Plaintiff's claims were denied initially and upon reconsideration. Plaintiff then filed a request for a hearing before an Administrative Law Judge ("ALJ"), which was held before the Honorable Christopher K. Bullard on October 20, 2011. (R. 27-49). Plaintiff appeared and testified at the hearing. (Id.).

The ALJ issued his determination on November 7, 2011. (R. 16-26). On December 15, 2011, Plaintiff filed a Request for Review of Hearing Decision, which was denied by the Appeals Council on June 28, 2013. (R. 14-15; 1-4). That decision is now the final decision of the Commissioner of Social Security.

b) Hearing Testimony

At the hearing, Plaintiff was represented by counsel. (R. 29). Plaintiff is a 46-year-old female with a high school

2

education. (R. 31). She has not worked since 2007, but was previously employed by a day care center. (R. 32-33). Plaintiff's employment ended when she was charged with endangerment of a child after a child was injured at the facility. (R. 33). Plaintiff testified that she was still on probation for that incident and was attending court ordered treatment in early 2009 for anger management. (R. 34).

Plaintiff also testified that she has a long history of depression, a history of being the victim of domestic violence, and a history of problems controlling her anger. (R. 35). She further testified that she was currently taking medication prescribed by her psychiatrist, which makes her tired and suppresses her appetite. (R. 36). In addition, Plaintiff reported feelings of fear and paranoia and difficulty socializing. (R. 36-38). She also reported problems with memory and concentration and that she has anxiety attacks where she feels "overwhelmed." (R. 38). Plaintiff has a history of substance abuse including cocaine and marijuana; she testified that she was currently using marijuana approximately once a month. (R. 39).

Plaintiff lost her driver's license and testified that she relies on her sister to take her shopping once a month. (R. 37). Going to church is her main outside activity. (R. 39).

3

Plaintiff stated that she is often tired and naps and does not have much of a social life. (R. 40).

During the hearing, Joseph Vitolo,[1] M.D., a Board Certified psychiatrist, testified as a medical expert. (R. 40-41). Dr. Vitolo did not examine the Plaintiff, but reviewed all medical data of record. Based on his review, he determined that Plaintiff had "several medically determinable impairments, which are severe" including: affective disorder, with a major depressive disorder, personality disorder and substance addiction disorder. (R. 41-42). In addition, Dr. Vitolo found that Plaintiff was "moderately limited" in her activities of daily living and stated that the "treating source and examining sources in evaluations . . . indicate that the claimant has depression that ranges from mild to moderate, and that the evidence does not support a listings level impairment." (R.41-42).

In addition to Dr. Vitolo, William T. Slaven, a Vocational Expert ("VE"), also testified at the hearing. (R. 42). The VE identified the skill and exertional levels of Plaintiff's past relevant work (i.e., skill level: unskilled or semiskilled and exertion level: light). (R. 45). The ALJ presented the VE with a hypothetical asking him to assume that there is an individual

---

[1] Improperly spelled "Pratola" in the hearing transcript.

who is 46 years of age, with a high school education, who has no exertional limitations, but has nonexertional limitations of being able to relate to coworkers, supervisors and the general public only on an occasional basis. (R. 46). The VE was asked whether the hypothetical individual could perform any of the past relevant work previously identified and he responded, "No, Your Honor." (R. 46).

Based on the same hypothetical, the ALJ was asked whether jobs existed in the regional or national economy that an individual with those limitations could perform. The VE stated that there were jobs fitting the criteria including: hand packager, assembler, and lens inserter. (R. 47). He further testified that if the hypothetical individual were to miss two or more days of work a month such individual "could not maintain fulltime employment." (R. 47-48).

c) The ALJ's Decision

Applying the requisite five-step analysis,[2] the ALJ concluded that Plaintiff met the insured status requirements of the Social Security Act and had not engaged in substantial gainful activity since September 10, 2009. (R. 21). The ALJ determined that Plaintiff has the severe impairments of

---

[2] Described on pages 11-12 infra.

affective mood disorder and substance abuse disorder.  (R. 21-23).  In making this finding, the ALJ relied on the following record evidence:

- 2008 records from the South Jersey Behavioral Health Resource Center's program showing that Plaintiff had a history of depression and alcohol abuse and that she lost her job in 2007 after being charged with child endangerment.  (R. 21 citing Exs. 1F & 8F).
- The 2009 report of Dr. Bruskin, a medical consultant for the New Jersey Division of Disability Determinations, who reported that Plaintiff could sustain concentration, persistence and pace, understand and execute responsibilities associated with the work environment, accept authority, and deal with stress and change.  (Id. citing Ex. 5F).
- Notes from Steininger Behavioral Care Services from 2009 wherein Plaintiff was diagnosed with major depressive disorder, recurrent alcohol abuse, cannabis abuse, cocaine abuse and assigned a Global Assessment of Functioning score of 55.  May of 2011 notes indicate that Plaintiff showed improvement, was no longer on medication, and that her mental issues were in partial remission.  (Id. at 21-22 citing Ex. 3F and 11F).
- The Report of Dr. Young Lee, who conducted a consultative mental status exam in July of 2010, during which Plaintiff reported getting along well with others and completing tasks such as cooking, cleaning and shopping. Dr. Lee noted that Plaintiff's psychiatric impairment appeared to be mild, that she was able to follow direction, and her interpersonal relationships were not impaired.  (Id. citing Ex. 7F).
  - The October 2011 records of Dr. Pinninti, Plaintiff's treating psychiatrist, noting that Plaintiff had a GAF score of 55 and that she was moderately limited in her ability to remember work-like procedures and understand and remember detailed instructions. (R. 23).  Dr. Pinninti stated that Plaintiff suffered from chronic fatigue syndrome and that she would be absent form work more than three times a month due to her impairments.

The ALJ discounted the diagnosis of chronic fatigue stating that Dr. Pinninti found Plaintiff had no physical limitations and

6

that his statement regarding her work attendance is "entirely speculative". (R. 23 citing Ex. 12F)

Based on the above, and relying on the hearing testimony of Dr. Vitolo, the ALJ determined that Plaintiff's impairments did not meet with the criteria for listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 23). Then, reviewing the record, the ALJ found that the Plaintiff had no exertional limitations,[3] but that due to her mental impairments, she could understand and remember simple instructions, carryout simple repetitive tasks, and could occasionally relate to co-workers, the public and supervisors. In making this finding the ALJ relied on the following:

- His finding that Plaintiff's limitations were not to the intensity, frequency or duration alleged and that her alleged limitations were exaggerated compared to the objective medical evidence of record. (R. 24).
- Plaintiff's report that she was independent in self-care (i.e., she cooks meals, does chores, shops, manages money, uses public transportation, and attends church) and that she understands written and spoken instructions. (Id.)
- The reports of Dr. Lee, Dr. Bruskin, and notes from the Steininger Behavioral Care Services discussed above.
- The hearing testimony of Dr. Vitolo, the impartial medical expert, who stated that Plaintiff had several severe mental impairments, but none that met or equaled the relevant Listings, and that the Plaintiff demonstrates a "mild degree of limitation in the

---

[3] The Opinion says "no nonexertional limitations" however it is clear that this is a typographical error and the ALJ in fact meant no exertional limitations.

activities of daily living" and that claimant is "capable of performing substantial gainful activity."[4]

The ALJ then determined that the Plaintiff was capable of performing her past relevant work as a cafeteria attendant. (R. 25). This finding was based on the hearing testimony of the VE who testified at the hearing. According to the ALJ, the VE testified in response to the posed hypothetical that Plaintiff could return to her past relevant work as a cafeteria aide.[5] (R. 25). The ALJ noted that the VE gave examples of unskilled work that the individual with the hypothetical limitations presented could perform, including hand packager, assembler, or lens inserter. (R. 26).

As a result of the above findings, the ALJ ultimately determined that the Plaintiff is not disabled as defined by the Social Security Act. (R. 19).

## II.  Standard of Review

A reviewing court must uphold the Commissioner of Social Security's factual findings if they are supported by "substantial evidence," even if the court would have decided the inquiry differently. 42 U.S.C. §§ 405(g), 1383(c)(3); Knepp v.

---

[4] As discussed further below, this is a complete mischaracterization of Dr. Vitolo's testimony.
[5] For reasons set forth below, this statement is completely inaccurate.

Apfel, 204 F.3d 78, 83 (3d Cir. 2000); Fargnoli v. Hatter, 247 F.3d 34, 38 (3d Cir. 2001). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Where the evidence is susceptible to "more than one rational interpretation, the Commissioner's conclusion must be upheld." Ahearn v. Comm'r, 165 F. App'x 212, 215 (3d Cir. 2006) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984); Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).

If faced with conflicting evidence, however, the Commissioner "must adequately explain in the record his reason for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). Stated differently,

> [U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Ed. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)) (internal quotations omitted); see also Guerrero v.

9

Comm'r, No. 05-1709, 2006 WL 1722356, at *3 (D.N.J. June 19, 2006) ("The [administrative law judge's] responsibility is to analyze all the evidence and to provide adequate explanations when disregarding portions of it."), aff'd, 249 F. App'x 289 (3d Cir. 2007).

While the Commissioner's decision need not discuss "every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004), it must consider all pertinent medical and non-medical evidence and "explain [any] conciliations and rejections," Burnett v. Comm'r, 220 F.3d 112, 122 (3d Cir. 2000). See also Fargnoli, 247 F.3d at 42 ("Although we do not expect the [administrative law judge] to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law.").

In addition to the "substantial evidence" inquiry, the reviewing court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The court's review of legal issues is plenary. Sykes, 228 F.3d at 262 (citing Schaudeck v. Comm'r, 181 F.3d 429, 431 (3d Cir. 1999)).

**"Disability" Defined**

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). In Plummer, 186 F.3d at 428, the Third Circuit described the Commissioner's inquiry at each step of this analysis:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

11

In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that [his] impairments are "severe," [he] is ineligible for disability benefits.

In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform [his] past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to [his] past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume [his] former occupation, the evaluation moves to the final step.

At this [fifth] stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [his] medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether [he] is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

### III. Analysis

a) <u>The ALJ's Assessment at Step Four</u>

Remand in this case is warranted because the ALJ made a Step Four determination that Plaintiff "is capable of performing past relevant work as a cafeteria attendant." (R. 25). Such a finding is, however, not supported by substantial evidence as the finding is based on a complete misstatement of the Vocational Expert's testimony, as plainly admitted by Defendant. See Def.'s Br at 15 ("Plaintiff is correct that the vocational expert's testimony about Plaintiff's past relevant work does not support the ALJ's step four finding."). Instead, when asked by the ALJ whether an individual with the hypothetical limitations identical to those identified for Plaintiff could return to past relevant work, the ALJ responded, "No, Your Honor." (R. 46).

Plaintiff is correct that this faulty step four analysis cannot be "saved" by moving to step five. As set forth by Defendant, "if the claimant is not disabled at any point of the sequential analysis, the claim will not be reviewed further." Def.'s Br. at 3. The ALJ also stated that "[i]f it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step." (R. 20). Thus, to the extent that the ALJ opined that the Plaintiff could work in other jobs in the national economy, such a finding is merely dicta. (R. 21: "If the

13

claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled."). The Defendant in this matter cannot bootstrap what could be a correct step five determination to an incorrect step four finding that ended the ALJ's analysis per the applicable regulation. See 20 C.F.R. § 416.920(a)(4)("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step"). Therefore, remand is appropriate.[6]

Medical Expert Evidence[7]

With respect to the medical evidence of record, Plaintiff contends that the ALJ misstates the testimony of the medical expert Dr. Vitolo regarding Plaintiff's activities of daily living. Defendant concedes that this misstatement occurred. Def.'s Br. at 10. In his decision, the ALJ states that Dr. Vitolo stated that Plaintiff was "capable of performing

---

[6] On remand, if the ALJ finds Plaintiff cannot return to past relevant work and moves on to step five, he should then consider the issue of whether the jobs identified by the VE meet the appropriate DOT Reasoning Development Level – i.e., Level 2 versus Level 1 – in light of Plaintiff's RFC.

[7] This Court construes Plaintiff's arguments regarding the ALJ's determinations with respect to her treating physician as a challenge to the ALJ's step four finding of Residual Functional Capacity. See Johnson v. Comm'r, 529 F. 3d 198, 201 (3d Cir. 2008)(construing arguments regarding treating physician's opinions as a challenge to the ALJ's step four finding).

14

substantial gainful activity." (R. 25). A review of the hearing testimony reveals, however, that nowhere in the record does Dr. Vitolo state that. In addition, the Defendant concedes, quite correctly, that the ALJ also misstates Dr. Vitolo's characterization of Plaintiff's limitations on activities of daily living as "mild" instead of the correct "moderate." (R. 25 & 42). On remand, the ALJ should refer to the correct testimony of Dr. Vitolo.

Plaintiff additionally argues that the ALJ failed to properly consider the opinion of Dr. Pinninti, Plaintiff's treating psychiatrist, specifically the finding of the October 2011 assessment. An ALJ must accord "[t]reating physicians' reports . . . great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Plummer, 186 F.3d at 429 (internal citations omitted). The ALJ must also consider the findings and opinions of state agency medical consultants and other sources consulted in connection with ALJ hearings. 20 C.F.R. § 404.1527(e)(2)(i). If non-examining medical source opinions are supported by medical evidence in the record, they may constitute substantial evidence and override a treating physician's opinion. Alexander v. Shalala, 927 F. Supp. 785, 795 (D.N.J. 1995), aff'd per curiam, 85 F.3d 611 (3d Cir. 1996). "When a conflict in the evidence exists, the ALJ

may choose whom to credit but cannot reject evidence for no reason or for the wrong reason . . . . The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." Plummer, 186 F.3d at 429 (internal citations omitted). An ALJ errs by failing to address evidence in direct conflict with his findings. Landeta v. Comm'r, 191 F. App'x. 105, 110 (3d Cir. 2006).

   Plaintiff appears to take no issue with the ALJ discounting the treating physician's opinions regarding chronic fatigue syndrome and being absent from work more than three times a month, as those are findings of Dr. Pinninti that were specifically addressed by the ALJ. See Pl.'s Br. at 10 ("Even if you assume that the ALJ properly discounted the chronic fatigue syndrome and being absent from work more than three times a month, that does not save the decision."). Plaintiff instead contends that the ALJ did not state any reason for discounting the remaining limitations identified by Dr. Pinninti (e.g., Plaintiff's moderate limitations in several areas such as concentration and social interaction), even though he is required to specify the contradictory evidence of record and why it supports a conclusion different from the treating physician. See Fargnoli v. Halter, 247 F.3d 34, 42 (3d Cir. 2001)("Where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the

16

reasoning behind the ALJ's conclusions, and will vacate or remand a case where such an explanation is not provided.").

In response, Defendant contends that in declining to give weight to the October 2011 assessment, the ALJ properly found the relevant portions of that assessment were not well supported by objective medical evidence and inconsistent with other evidence of record. Defendant argues that the decision demonstrates that the ALJ considered the mental health treatment records that undermine Dr. Pinninti's overly restrictive assessment.

This Court finds that, with the exception of his faulty reliance on the misstated evidence of Dr. Vitolo's testimony, which must be revisited on remand for reasons already discussed above, that the ALJ otherwise provided substantial evidence to support his rejection of Dr. Pinninti's findings. For example, he cites the report of Dr. Lee, wherein Plaintiff's psychiatric impairment was found to by mild and she was found to be able to follow directions and maintain interpersonal relationships. (R. 24 citing Ex. 7F). In addition, he cites the 2009 report of Dr. Bruskin, who, contrary to the findings of Dr. Pinninti, reported that Plaintiff could sustain concentration, persistence and pace, understand and execute responsibilities associated with the work environment, accept authority and deal with stress and change. (Id. citing Ex. 5F). Finally, he cites the notes from

17

Steininger Behavioral Care Services from 2009 demonstrating improvement and from May of 2011 that indicate that Plaintiff was no longer on medication and that her mental issues were in partial remission and her concentration and memory were intact. (Id. citing Ex. 3F and 11F).  Based on the above, the Court finds that the ALJ considered the evidence and gave a reason for discounting the evidence he rejected as required.  See Plummer, 186 F.3d at 429.  That said, the issue of Dr. Vitolo's testimony and its role on the ALJ's determination will have to be revisited on remand.

### Plaintiff's Credibility

In the ALJ's opinion, the ALJ states that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment."  (R. 24).  He further states that Plaintiff's alleged limitations "appeared exaggerated compared to the objective medical evidence of record[.]" (Id.)

The Plaintiff contends that the ALJ failed to properly assess the credibility of her hearing testimony in that the ALJ failed to identify any specific evidence of record or inconsistencies in violation of Social Security Ruling 96-7p. Per that ruling,

18

> An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.
>
> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."

SSR 96-7p.

In response, the Defendant argues that the ALJ "pointed to extensive and specific evidence to support his credibility finding." Def.'s Br. at 13. After stating that Plaintiff's statements regarding her symptoms are not credible, the ALJ did discuss Plaintiff's own reports indicating that she was independent in self-care and could understand instructions and concentrate well. (R. 24 citing Exs. 4E and 1E). He also referred to the reports of Dr. Lee, Dr. Bruskin and Steininger Behavioral Care Services which indicate that Plaintiff's impairments. (Id.). That said, it is unclear which aspects of Plaintiff's hearing testimony the ALJ considered and rejected as he never specifically refers to or mentions any of her testimony. For example, she testified at the hearing that she has difficulty concentrating and paying attention and does not want to be around people much. (R. 38 & 40).

While the ALJ may have rightly found Plaintiff's testimony not credible, "he must give some indication of the evidence that

19

he rejects and his reason(s) for discounting that evidence." Fargnoli, 247 F.3d at 43.  Again, the ALJ makes a single conclusory statement regarding Plaintiff's credibility and it is unclear what aspects of her testimony or subjective complaints the ALJ was rejecting.  Thus, this Court agrees that the ALJ failed to properly assess Plaintiff's credibility, and while the evidence of record may likely support the same determination on remand, the ALJ must properly discuss her testimony.  See Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)("[W]e need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.").

**IV. Conclusion**

For the reasons stated above, this Court will vacate the decision of the ALJ and remand.  An accompanying Order will issue this date.

                                          s/Renée Marie Bumb
                                          RENÉE MARIE BUMB
                                          United States District Judge

Dated October 30, 2014